The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission declines to overturn the credibility determinations made by the Deputy Commissioner. Sanders v.Broyhill Furniture Industries, 124 N.C. App. 637, 478 S.E.2d 223
(1996), disc. rev. denied, 346 N.C. 180, 486 S.E.2d 208 (1997).
 ***************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Plaintiff was employed by defendant-employer on September 19, 1994.
2. Continental Casualty Company was the carrier on the risk on September 19, 1994.
3. Plaintiff alleges that he was injured on September 19, 1994.
4. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on September 19, 1994, defendant-employer employing the requisite number of employees to be bound under the provisions of said Act.
5. Plaintiff's average weekly wage can be calculated from the I.C. Form 22 completed by the employer.
6. The issues to be decided are: (1) whether plaintiff's testimony is credible, (2) if so, whether the alleged incident of September 19, 1994 was an accident within the meaning of the Workers' Compensation Act, (3) if so, whether that incident resulted in any injury, and (4) if so, the extent to which plaintiff is entitled to workers' compensation benefits.
7. Plaintiff worked for defendant-employer through September 19, 1994 without any loss of wages.
8. The parties stipulated into evidence, without need for further authentication or verification, a packet of medical records labeled Stipulated Exhibit 1 consisting of records from the following:
— Kaiser Permanente
— Rex Hospital
— Triangle Orthopaedic Associates, P.A.
— Wake Memorial
— Wake Forest Chiropractic Center.
9. The parties stipulated into evidence Industrial Commission Forms 18, 19, 33, 33R and 61 as documents filed with the Commission but not for the truth of the matters contained therein.
 *************** RULINGS ON EVIDENTIARY MATTERS
The objections raised by the parties at the depositions of Dr. Gilmer, Dr. Moriarty and Ms. Robertson are ruled upon in accordance with the law and the Opinion and Award in this matter.
 ***************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 39 year old male with a date of birth of November 29, 1957. Plaintiff has a high school diploma and prior to beginning work with defendant-employer was employed as a messenger, material handler, desk builder, machine operator, stock clerk and an employee at a cotton mill.
2. In May 1985, plaintiff became employed with defendant-employer as a second helper. Plaintiff subsequently moved up to a position of first helper with defendant-employer at which position he was working at all times relevant to this inquiry. As a first helper plaintiff fed corrugated cardboard into a machine. If the cardboard became wedged in the machine, the plaintiff had to pull out the cardboard before it went through the machine. Normally the cardboard is moved into the machine to be made into boxes on a conveyor belt with rollers. However, if the cardboard is warped or gets stuck between the rollers, the machine would become jammed and plaintiff would have to drop the conveyor belt and push the cardboard himself.
3. At the hearing, plaintiff contended that on September 19, 1994, as he was carrying out his regular duties, the cardboard had been put on the line improperly and he had to adjust the belt and push the load of cardboard back on it. The second load of cardboard was warped and plaintiff testified he had to push harder on the cardboard. Plaintiff then testified he felt his back hurting and felt pain in his left leg after he twisted. Plaintiff also testified that he went to his supervisor and asked for a back brace and returned to work but alleged that his back was "feeling funny." Plaintiff indicated that at the time he requested a back brace from his supervisor, Norman Higgs, he merely indicated he had strained his back. However, on cross examination, plaintiff contended the above-described incident happened the week before Labor Day, but he first reported his injury on September 19, 1994. Plaintiff also indicated on his Industrial Commission Form 18, filed April 27, 1995 and signed by plaintiff, that his injury occurred on September 9, 1994. Plaintiff indicated in his verified interrogatories that his injury occurred on September 19, 1994. Plaintiff indicated on his Claim for Disability Benefits filed with his employer that his injury occurred on September 18, 1994. When plaintiff presented to Kaiser Permanente for health care on September 21, 1994 he indicated to the physician's assistant that his injury had occurred two weeks ago. When plaintiff presented to Dr. Gilmer on February 20, 1995 he indicated that his injury had occurred in late August 1994. In plaintiff's discussion with Dr. Moriarty on his first visit on January 31, 1995, plaintiff indicated that his injury had occurred in mid August 1994.
4. It is undisputed that plaintiff continued working with defendant-employer through September 19, 1994. It was on or after September 19, 1994 when plaintiff first reported to defendant-employer that he was alleging that he had suffered a work-related back injury.
5. Before his employment with defendant-employer plaintiff had suffered from back problems and in June 1985 underwent a lumbar hemilaminectomy of L-4/5 and excision of herniated disc performed by Dr. Carroll L. Mann for treatment of a herniated disc at the L-4/5 level on the left. Although at the hearing plaintiff testified that his symptoms had resolved following that surgery, he indicated to Dr. Gilmer on February 20, 1995 that he could not believe his previous surgery at L-4/5 helped his very much.
6. In August 1994 while at home, plaintiff was working on his trailer and fell from the tongue of the trailer, according to his estimation approximately five to six feet, landing on his chest on the ground.
7. On September 21, 1994 plaintiff presented to Kaiser Permanente for his low back and hip pain. On September 29, 1994, plaintiff was seen for an orthopaedic evaluation and was diagnosed with sciatica of the left lower extremity and spondylosis. The spondylosis pre-existed his August 1994 complaints. An MRI was performed on plaintiff on October 20, 1994 which indicated scarring at the L4-L5 level from plaintiff's prior hemilaminectomy and a moderate bulging disc at the L4-L5 level which was crowding a nerve on the left. Plaintiff was treated conservatively and was given lumbar epidural steroid injections on November 1, 1994 and November 15, 1994. By November 17, 1994, plaintiff indicated that he was in less pain and in particular his sciatica was improving. On December 18, 1994 plaintiff's sciatica was still improving but plaintiff continued to have back pain.
8. On January 31, 1995 plaintiff first consulted with Dr. Mark Moriarty, an orthopedic surgeon, and presented with tenderness in the lower back with some sciatic pain on the left. These findings were consistent with plaintiff's degenerative disc disease and the MRI reading of a small disc herniation which caused the left leg pain.
9. Dr. Moriarty referred plaintiff to Dr. Peter W. Gilmer who saw plaintiff on February 20, 1995 at which time plaintiff was suffering from chronic low back pain with L4-5 degenerative disc changes.
10. Dr. Gilmer recommended conservative care for the plaintiff for his chronic back pain including exercise, anti-inflammatories and perhaps job restrictions. Dr. Gilmer encouraged plaintiff to change or modify his job.
11. Plaintiff was again seen by Dr. Moriarty in March of 1995 and May 1995. On May 4, 1995 Dr. Moriarty diagnosed plaintiff with failed back syndrome and indicated that the plaintiff's condition was not going to be improved by surgery. Dr. Moriarty restricted the plaintiff to minimal lifting with limited sitting, standing and walking with changing positions and conditions frequently. Plaintiff was prohibited from bending, stooping, twisting, pushing and pulling.
12. After September 19, 1994, plaintiff has not attempted at any time to seek employment. Dr. Gilmer would have encouraged the plaintiff to do light duty work and to find a job within his restrictions. Dr. Moriarty felt that plaintiff's condition was permanent and that it would be unlikely that he could obtain gainful employment; however, he would have encouraged plaintiff to attempt a job within his restrictions.
13. S. Denise Robertson, a vocational consultant, conducted several labor market surveys in the vicinity of plaintiff's residence. These market studies revealed several sedentary to light positions which were available at the time of the labor market survey and were within plaintiff's restrictions. These positions included customer service representative, assembler, telemarketer, desk clerk and security positions. Salaries for these positions range from $4.75 per hour to $9.49 per hour. Mr. Robertson opined that if plaintiff had conducted a job search, he would have located and obtained employment within his restrictions.
14. Plaintiff received twenty-six weeks of short term disability benefits at a rate of $175.00 per week pursuant to a non-contributory employer-funded disability plan.
15. The Deputy Commissioner found, and the Full Commission therefore finds that plaintiff's testimony as to his alleged work-related injury was not credible, based on plaintiff's testimony and the ensuing inconsistencies, plaintiff's demeanor and the other credible testimony of record.
16. Since plaintiff's testimony is not accepted as credible, plaintiff has failed to prove by the greater weight of the evidence that any injury to plaintiff's back was a result of an injury by accident or specific traumatic incident of the work assigned arising out of or in the course of his employment with defendant-employer.
17. Even if plaintiff's testimony were accepted as credible, while plaintiff's back and leg pain could have been caused by the alleged injury by accident as described, it could have equally been caused by the fall at plaintiff's trailer. Thus, plaintiff has failed to prove by the greater weight of the evidence that any injury to his back and resulting back or leg pain was caused by the alleged injury by accident.
 ***************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to establish by the greater weight of the evidence that he suffered an injury by accident arising out of or in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C.G.S. § 97-2(6).
 ***************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and the same is hereby, DENIED.
2. Each side shall bear its own costs, except that defendant shall pay a fee of $235.00 to Mark H. Moriarty, M.D. in connection with his deposition taken January 22, 1997 and a fee of $90.00 shall be paid to S. Denise Robertson in connection with her deposition taken March 7, 1997.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ RENEÉ C. RIGGSBEE COMMISSIONER
LKM/bjp